1   ROBERT QUALEY
    Dotson & Qualey
2   2320 Paseo Del Prado, B 205
    Las Vegas, NV 89102
3   (702) 474-667
    rqualey@qualeylawfirm.com
4
    TOMIO B. NARITA (pro hac vice)
5   Simmonds & Narita LLP
    44 Montgomery Street, Suite 3010
6   San Francisco, CA 94104
    (415) 283-1010
7   tnarita@snllp.com
8   Attorneys for Defendant
    Easy Loans Corporation
9

10

11              UNITED STATES DISTRICT COURT
12                  DISTRICT OF NEVADA
13

14   RAMON IZQUIERDO,                    )
                                         )   Case No. 2:13-cv-01032-RBF-VCF
15          Plaintiff,                   )
                                         )
16   vs.                                 )   **NOTICE OF MOTION AND MOTION
                                         )   FOR SUMMARY JUDGMENT BY
17                                       )   DEFENDANT EASY LOANS
                                         )   CORPORATION; MEMORANDUM
18   EASY LOANS CORPORATION; and         )   OF POINTS AND AUTHORITIES IN
     DOES 1-10, inclusive,               )   SUPPORT**
19                                       )
            Defendants.                  )   (Hearing Requested)
20                                       )
                                         )
21                                       )
                                         )
22   ───────────────────────────────    )

23

24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT defendant Easy Loans Corporation ("Defendant" or "Easy Loans"), hereby moves this Court for an Order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment in its favor on all claims.

The motion is made on the grounds that the plaintiff has no admissible evidence to meet his burden of proving that the financial obligation at issue is a "debt" or that Easy Loans acted as a "debt collector" as those terms are defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").  In addition, the claims asserted in the state court lawsuit filed against the plaintiff to collect his account were not barred by the statute of limitations and thus, the suit did not violate the FDCPA. Accordingly, there are no genuine issues of material fact for trial and summary judgment should be entered in Easy Loans' favor.

The motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support of the Motion, Defendants' Separate Statement of Undisputed Facts in support of the Motion, the declaration of Tomio B. Narita in support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Doc Nos. 34-2, 34-3, 34-4 and 34-5), all of the papers on file in this action, and upon such other and further evidence or argument that the Court may consider.

Dated: October 21, 2014               SIMMONDS & NARITA LLP
                                      TOMIO B. NARITA (*pro hac vice*)


                                      By: ___/s/ Tomio B. Narita _____
                                          Tomio B. Narita
                                          Attorney for Defendant
                                          Easy Loans Corporation

# **TABLE OF CONTENTS**

I.      INTRODUCTION................................................... 1

II.     STATEMENT OF FACTS ........................................ 2

III.    ARGUMENT. .................................................... 4

        A.    Legal Standard Governing Summary Judgment.................... 4

        B.    Izquierdo's Claim Fails Because There Is No Evidence His
              Account Is A "Debt" Under The FDCPA........................ 5

        C.    There Is No Evidence That Easy Loans Is A "Debt Collector"
              Subject To The FDCPA. ..................................... 10

        D.    The State Court Action Was Filed Within The State Of Limitations. . 14

              1.    The Account Was Founded Upon An Instrument In Writing,
                    Therefore Nevada's Six-Year Statute Of Limitations Applies. . 14

              2.    If The Court Finds California's Four-Year Statute Of
                    Limitations Applies, The Limitations Period Was Tolled
                    And The State Court Action Was Timely. ................. 16

IV.     CONCLUSION................................................... 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. AFNI, Inc.*
2011 WL 1808779 (E.D. Pa. May 11, 2011)............................... 7, 8

*Bagley v. Beville*
2014 WL 28873 (D. Nev. Jan. 2, 2014). ................................. 14

*Betts v. Equifax Credit Info. Servs., Inc.*
245 F.Supp. 2d 1130 (W.D. Wash. 2003)................................. 9

*Bloom v. I.C. Sys., Inc.*
972 F.2d 1067 (9th Cir. 1992)....................................... 6, 8

*Bohus v. Beloff,*
950 F.2d 919 (3d Cir. 1991). ....................................... 16

*Brumbaugh and Quandahl, P.C.*
731 F. Supp. 2d 915 (D. Neb. Aug. 12, 2010). ......................... 8

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986). ............................................... 5

*Coleman v. Quaker Oats Co.*
232 F.3d 1271 (9th Cir. 2000) ..................................... 5, 13

*In Re Creditrust Corp.*
283 B.R. 826 (D. Md. 2003).......................................... 8

*Devereaux v. Abbey*
263 F.3d 1070 (9th Cir. 2001) ....................................... 5

*Ditty v. CheckRite, Ltd.*
973 F. Supp. 1320 (D. Utah 1997) .................................... 8

*Federal Election Comm'n v. Toledano*
317 F.3d 939 (9th Cir. 2002)........................................ 5

*Fleet Nat'l Bank v. Baker*
263 F. Supp. 2d 150 (D. Mass. 2003) ................................. 8

*First Gibraltar Bank, FSB v. Smith*
62 F.3d 133 (5th Cir. 1995)......................................... 8

*Garcia v. Jenkins/Babb LLP*
2013 WL 6388443 (N.D. Tex. Dec. 5, 2013)............................ 7

*Gilmour v. Gates, McDonald & Co.*
382 F.3d 1312 (11th Cir. 2004)...................................... 5

*Graham v. ACS*
2006 WL 2911780 (D. Minn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gulley v. Markoff & Krasny*
664 F.3d 1073 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hunter v. Washington Mut. Bank*
2012 WL 715270 (E.D. Tenn.  Mar. 1, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Railway Exp. Agency, Inc.*
421 U.S. 454 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Keenan v. Allan*
91 F.3d 1275 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mabe v. GC Servs., Ltd.*
32 F.3d 86, 88 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Matin v. Fulton, Friedman & Gullace LLP*
2011 WL 5925019 (E.D. Pa. Nov. 14, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Middleton v. Plus Four, Inc.*
2014 WL 910351 (D. Nev. Mar. 7, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Morin v. Moore*
309 F.3d 316 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pollice v. National Tax Funding, LP*
225 F.3d 379 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Satterfield v. Simon & Schuster, Inc.*
569 F.3d 946 (9th Cir. 2009)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Scally v. Hilco Receivables, LLC*
392 F. Supp. 2d 1036 (N.D. Ill. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Schlegel v. Wells Fargo Bank, N.A.*
720 F.3d 1204(9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schlosser v. Fairbanks Capital Corp.*
323 F.3d 534 (7th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Slenk v. Transworld Systems, Inc.*
236 F.3d 1072 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*
138 F.3d 772 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Staub v. Harris*
626 F.2d 275 (3d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Toroussian v. Asset Acceptance, LLC*
2013 WL 5524831 (C.D. Cal. Oct. 4, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

*Turner v. Cook*
362 F.3d 1219 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*TwoRivers v. Lewis*
174 F.3d 987 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Webster v. Beazer Homes Holdings Corp.*
2013 WL 271448 (D. Nev. Jan. 23, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**STATE CASES**

*Cvecich v. Giardino*
37 Cal. App. 2d 394 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*El Ranco, Inc. v. New York Meat & Provision Co.*
 88 Nev. 111 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Green v. Zissis*
5 Cal. App. 4th 1219 (1992)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*State v. Jarman*
84 Nev. 187 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**FEDERAL STATUTES**

Federal Rules of Civil Procedure
    56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fair Debt Collection Practices Act
    15 U.S.C. § 1692, *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
    § 1692a(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6
    § 1692a(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13
    § 1692d. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 1692e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 1692e(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 1692e(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 1692e(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 1692e(10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 1692f(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


**STATE STATUTES**

Nev. Rev. Stat. Ann. § 11.190. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Cal. Civ. Proc. Code § 351. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I.  **INTRODUCTION**

Plaintiff Ramon Izquierdo ("Izquierdo") claims that defendant Easy Loans Corporation ("Easy Loans") violated the FDCPA[1] because a lawsuit was filed on its behalf against him to collect his delinquent credit card account.  In his Complaint, Izquierdo insists that the suit was barred by the statute of limitations – either under Nevada or California law.  He is wrong.  The claims in the state court suit were governed by Nevada's six year limitations because, as Izquierdo admits, the account was founded upon an instrument in writing.  The suit was filed timely.

The Court need not even reach this issue, however, because Izquierdo cannot meet his burden of proving that the FDCPA applies to his account or to Easy Loans.

First, there is no evidence that the account is a "debt" under the FDCPA – *i.e.* that the transactions that make up the unpaid balance were incurred  "primarily for personal, family or household purposes."[2]  This is a "threshold" issue on which Izquierdo has the burden of proof, yet he stated in his responses to discovery and confirmed at his deposition that he has no evidence of the nature of the charges or why they were incurred.  Easy Loans also has no knowledge of how the account was used or for what purpose.  Summary judgment for Easy Loans is proper, because no trier of fact could find the FDCPA covers the account.

Second, Easy Loans is not a "debt collector" under the FDCPA.  The company has no employees, does not send letters and does not make phone calls.  Easy Loans did not engage in any efforts to collect on Izquierdo's account; in fact, Easy Loans does not seek to collect anything from anyone.  During the relevant time frame, Easy Loans had a servicing agreement with non-party Troy Capital, LLC ("Troy Capital"), and Troy Capital would refer the accounts to various law firms who would then engage in collection efforts.  This is precisely what happened with Izquierdo's

---

[1] Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA")

[2] 15 U.S.C. § 1692a(5).

account.  There is no evidence that Easy Loans acted as a "debt collector" under the FDCPA, so the claim fails.

Finally, even if California's four-year statute of limitations applied, as the Complaint alleges in the alternative, the lawsuit was still timely.  The California statute of limitations was tolled beginning in 2008, while Izquierdo was unavailable for service in California.  If it applies, it has not run.

Easy Loans anticipates Izquierdo will argue that Delaware's three-year statute of limitations applies, because the Court previously took judicial notice of a card member agreement with a Delaware choice-of-law clause.  But Izquierdo cannot oppose summary judgment by asserting a theory not alleged in his Complaint.  Further, as discussed in Easy Loans' opposition to Izquerido's summary judgment motion (Doc. No. 34), the agreement has not been authenticated and therefore cannot be considered in connection with this motion.

For each of these reasons, Easy Loans is entitled to summary judgment.

## II.   STATEMENT OF FACTS

While he was living and working in Los Angeles, Izquierdo opened a credit card account issued by Chase Bank USA, N.A. (the "Account") at a Toys R Us store located there.  *See* Statement[3] at ¶ 1.  He received a copy of a Chase card member agreement when he opened the Account, but he did not retain a copy, nor does he have any idea what terms and conditions actually apply to the Account.  *Id*. at ¶ 2.  Easy Loans also does not know what card agreement applies to the Account either.  *Id*. at ¶ 3.

---

[3] Statement of Undisputed Material Facts Pursuant To Local Rule 56-1 In Support Of Defendant's Motion for Summary Judgment ("Statement").  The Statement cites to the declaration Easy Loans' counsel, Tomio B. Narita, submitted in support of Easy Loans' opposition to Izquierdo's summary judgment motion.  Rather than submit a duplicative declaration and supporting evidence, Easy Loans' Statement cites to Mr. Narita's declaration and the evidence attached there to, which can be found at document numbers 34-2, 34-3, 34-4, 34-5.

Izquierdo received monthly statements from Chase, read them and never disputed any of the charges. *Id.* at ¶ 4.  In 2008, he stopped paying. *Id.* at ¶ 5.  The last payment made on the Account was on April 3, 2008.  *Id.* at ¶ 6.  In about July of 2008, Izquierdo moved to Nevada, and has lived here since that time. *Id.* at ¶ 7.

Izquierdo has no knowledge of how he used the Account, the purpose of any of the charges or when the charges were made.  He could not identify any dates he used the card, anything he bought, or whether he took cash advances. *Id.* at ¶ 8.  If he had taken cash advances, he has no memory of what he used the funds for.  *Id.*  He did not produce any documents or information evidencing how he used the Account, what was purchased or for what purpose. *Id.* at ¶ 9.[4]

After Izquierdo defaulted, the Account was subsequently sold to Easy Loans. *Id.* at ¶ 11.[5]  Easy Loans, however, has no employees, does not engage in any collection activity and has no "day-to-day operations." *Id.* at ¶ 13.  Indeed, Izquierdo did not receive any communications from Easy Loans. *Id.* at ¶ 14.  Rather, Easy Loans turned over the Account to a law firm and subsequently to Troy Capital. *Id.* at ¶ 15.  Troy Capital eventually placed the Account with the law firm of Miles, Bauer, Bergstrom & Winters, LLP ("MBBW") for collection. *Id.* at ¶ 16.

On November 29, 2012, MBBW filed a lawsuit against Izquierdo to collect the

---

[4] Similarly, Easy Loans confirmed that it has no information regarding how any charges were incurred and has no knowledge of whether the unpaid balance on the Account is a "debt" subject to the FDCPA. *Id.* at ¶ 10.

[5] Easy Loans used to purchase defaulted accounts from creditors, but no longer does. *Id.* at ¶ 12.

unpaid balance due on the Account (the "State Court Action").  Doc. No. 8-1.[6]
However, Troy Capital, the servicer of the Account, was the entity that authorized the
filing of the suit.  *See* Statement at ¶ 17.  The complaint in the State Court Action
alleged claims for breach of contract and account stated.  *Id*. at Doc. No. 8-1.
Izquierdo admits the claims alleged in the state court complaint are founded upon an
instrument in writing.  *Id*. at Doc. No. 1 at ¶ 10; Statement at ¶ 18.

Izquierdo alleges that he resided in California when he opened the Account,
and for this reason, the claims filed by Easy Loans were subject to, and barred by,
California's four-year statute of limitations.  *See* Doc. No. 1 at ¶ 10.  He alleges in the
alternative that because the Account was allegedly incurred on an "open account for
goods wares and merchandise sold and delivered" and/or "article[s] charged on an
account in a store" the claims alleged in the State Court Action were subject to, and
barred by, Nevada's four year statute of limitations.  *Id*. at ¶ 11.  Based on these
allegations, Izquierdo contends that the claims in the State Court Action were
untimely, and that the complaint violated sections 1692d, 1692e, e(2), e(5), e(10) and
1692f(1) of the FDCPA.[7]

## III.  ARGUMENT

### A.   Legal Standard Governing Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law."  *See* Fed. R. Civ. Proc. 56(a).  As the moving party, Easy Loans may

---

[6] Izquierdo alleged the complaint was filed on November 12, 2012.  Doc. No. 1 at ¶ 14.  A copy of the complaint filed in the State Court Action was submitted in connection with Easy Loans' motion to dismiss and contains a file stamp reflecting the complaint was filed November 29, 2012.  Doc. No. 8-1.  Pursuant to Federal Rule of Evidence 201, Easy Loans requests the court take judicial notice of the fact that the State Court Action was filed on November 29, 2012.

[7] Izquierdo agreed to waive his claim under section 1692e(7) of the FDCPA.  *See* Statement at ¶ 19.

discharge its burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *accord Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*).

To survive this motion for summary judgment, Izquierdo "must present competent evidence that creates a genuine issue of material fact." *See Federal Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002). The materiality of a fact is determined by the underlying substantive law. *See State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 782 (9th Cir. 1998). "Summary judgment is appropriate when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009).

The Court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Nor can Izquierdo survive summary judgment by raising new claims or theories not alleged in his Complaint. *See, e.g., Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Morin v. Moore*, 309 F.3d 316, 323 (5th Cir. 2002).

**B.    Izquierdo's Claim Fails Because There Is No Evidence His Account Is A "Debt" Under The FDCPA**

Izquierdo alleges the claims in the State Court Action against him were time-barred and therefore, Easy Loans violated the FDCPA. But Izquierdo must first prove the majority of the unpaid charges incurred on the Account qualify as a "debt" as defined by the statute. Izquierdo has admitted he cannot do so. Because there is

absolutely no evidence of the nature of the charges, or the purpose they were incurred, summary judgment in favor of Easy Loans is proper.

An essential element of any claim brought under the FDCPA is that the "debt" was incurred "primarily for personal, family or household purposes." *See* 15 U.S.C. § 1692a(5); *see Middleton v. Plus Four, Inc.*, 2014 WL 910351, *2 (D. Nev. Mar. 7, 2014) (prove of a "debt" is essential element of FDCPA claim). The Ninth Circuit has held that proving the existence of a "debt" is a "threshold" issue in every FDCPA action. *See Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004) ("Because not all obligation to pay are considered debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the dispute involves a 'debt' within the meaning of the statute").

The determination of whether a "debt" was incurred depends on how the individual used the funds, <u>not</u> on the way that the collector subsequently treated the obligation. *See Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (personal loan from friend used to start software business not a "debt": "The [FDCPA] characterizes debts in terms of end uses . . . [n]either the lender's motives nor the fashion in which the loan is memorialized are dispositive of the inquiry"). In fact, the manner in which a collector treats an obligation to pay is <u>irrelevant</u> to whether it is a "debt" under the FDCPA. *See Slenk v. Transworld Systems, Inc.*, 236 F.3d 1072, 1076 (9th Cir. 2001) (rejecting argument that defendant's collection efforts "transformed" commercial loan into consumer debt: "We, too, refuse to ignore Congress's intent by defining a consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt.").

Izquierdo has the burden of proving unpaid charges on the Account qualify as a "debt" under the FDCPA.[8] Courts routinely enter summary judgment in favor of

---

[8] A point he concedes in his motion for summary judgment. *See* Doc. No. 33 at p. 7:8-9.

defendants on claims brought under the FDCPA when there is no admissible evidence of the circumstances under which charges were incurred on an account.  *See, e.g., Toroussian v. Asset Acceptance, LLC*, 2013 WL 5524831, *6 (C.D. Cal. Oct. 4, 2013) (summary judgment for defendant on FDCPA claim; plaintiff did not provide evidence that alleged fraudulent credit card charges qualified as a "debt"); *Anderson v. AFNI, Inc.*, 2011 WL 1808779, *14 (E.D. Pa. May 11, 2011) (same; victim of ID theft could not prove existence of "debt"); *Matin v. Fulton, Friedman & Gullace LLP*, 2011 WL 5925019, **4-5 (E.D. Pa. Nov. 14, 2011) (same; plaintiff did not provide sufficient evidence that her own credit card was a "debt"); *Hunter v. Washington Mut. Bank*, 2012 WL 715270, *2 (E.D. Tenn.  Mar. 1, 2012) (same; "It is the [FDCPA] plaintiff's burden to show that the obligation at issue was incurred 'primarily for personal, family, or household purposes.'"); *Garcia v. Jenkins/Babb LLP*, 2013 WL 6388443, *8 (N.D. Tex. Dec. 5, 2013) (same; no evidence that a "personal loan" from Wells Fargo used to pay balance on personal credit cards was a "debt" because plaintiffs failed to prove how credit cards were used).

    *Matin* is directly on point.  The plaintiff in *Matin* testified that she could not recall any of the purchases made on her own credit card.  *See Matin,* 2011 WL 5925019 at *1. Although she produced a single credit card statement, the court granted summary judgment for defendant, noting that the statement did not include an "itemized list" of charges comprising the debt.  *Id.* at *3.  Even if an itemized list had been included, summary judgment was still proper because "we would still lack sufficient information to determine whether the purchases were made for primarily personal, family, or household purposes.  This is especially the case because Matin herself is unable to recall what purchases she made on her credit card and the purposes of those purchases."  *Id.*

    *Anderson* is also persuasive.  The plaintiff in *Anderson* was a victim of identity theft.  She argued that the FDCPA applied, because the debts (Verizon telephone bills) were incurred by an individual, the address associated with debts was

residential, and defendant had treated the debts as being subject to the FDCPA. *See Anderson*, 2011 WL 1808779 at \*\*13-14. The court rejected this, noting that "individuals may – and often do – carry on commercial activities in residential settings." *Id.* Relying on *Slenk*, the court noted that "a debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of that obligation itself" and concluded that Plaintiff offered nothing more than "speculation and conjecture" about the reasons the debts were incurred. *Id.* at \*14.

Similarly, the plaintiff in *Toroussian* alleged the charges on a retail bridal shop credit card were fraudulent. *See Toroussian*, 2013 WL 5524831, \*6. The court entered summary judgement in favor of the collector on the FDCPA claim, however, because the plaintiff did not "put forth sufficient evidence that [a] consumer debt is at issue." *Id.* The court noted that the plaintiff "has not even attempted to identify the fraudulent charges made in her name, let alone demonstrate that they may have been incurred for personal, family, or household purposes." *Id*.

Credit cards, like the Account at issue here, are routinely used for a number of purposes not covered by the FDCPA. For example, if the card was used to incur business expenses, the FDCPA does not apply.[9] If the cards was used to pay other items such as fines, penalties, child support, or taxes, the FDCPA does not apply.[10] In

---

[9] *See, e.g., Brumbaugh and Quandahl, P.C.*, 731 F. Supp. 2d 915, 921-22 (D. Neb. Aug. 12, 2010) (refusing to grant summary judgment for either party where personal and business charges were incurred on credit card account); *In Re Creditrust Corp.*, 283 B.R. 826, 830-31 (D. Md. 2003) (attempts to collect credit card used for business purposes not covered by FDCPA); *see also Bloom*, 972 F.2d at 1068-69 (loan made to friend for business investment not "debt"); *First Gibraltar Bank*, *FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995) (commercial obligation not covered by FDCPA); *Fleet Nat'l Bank v. Baker*, 263 F. Supp. 2d 150, 154 (D. Mass. 2003) (commercial real estate loan not covered); *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1338 (D. Utah 1997) (three checks used for debtor's painting business not covered).

[10] *See, e.g., Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) ("the municipal fines levied against Gulley cannot reasonably be understood as 'debts'

---

both Nevada and California, credit cards can also be used to pay taxes and fines, neither of which are "debts" covered by the FDCPA.[11]  Personal credit cards can be used to obtain cash advances and the cash can be used to obtain numerous items that are not "debts" under the FDCPA.

Like the plaintiffs in *Matin*, *Anderson* and *Toroussian*, Izquierdo has no evidence that the unpaid balance on the Account is comprised of charges incurred "primarily for personal, family or household purposes."  He produced no evidence of any charges or how the Account was used.  *See* Statement at ¶¶ 8-9.  He testified that he had no memory of any charges made on the Account or why they were incurred. *Id.* at ¶ 8.  He admitted he may have taken cash advances on the Account but had no

---

arising from consensual consumer transactions for goods and services."); *Pollice v. National Tax Funding, LP*, 225 F.3d 379, 401-02 (3d Cir. 2000) (property taxes not "debts" under the FDCPA); *Mabe v. GC Servs., Ltd.*, 32 F.3d 86, 88 (4th Cir. 1994) (child support obligations not "debts" under FDCPA); *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980) (municipal taxes not "debts" under FDCPA); *Graham v. ACS*, 2006 WL 2911780, *2 (D. Minn. 2006) (unpaid parking tickets not "debts" under FDCPA); *Betts v. Equifax Credit Info. Servs., Inc.*, 245 F.Supp. 2d 1130, 1133-34 (W.D. Wash. 2003) (towing and impoundment fees not "debt" under FDCPA).

[11] Personal credit cards can be used to pay state and federal income taxes, and a variety of municipal fines, such as parking tickets and other traffic citations, none of which are "debts" subject to the FDCPA.  *See* State of California Franchise Tax Board, https://www.ftb.ca.gov/online/webpay/index.asp?WT.mc_id=Ind_Sidebar_WebPay (last visited October 6, 2014) (providing instructions on how to pay California state income taxes with a credit card); Official Payments, https://www.officialpayments.com/fed/index.jsp?x (last visited October 6, 2014) (providing an online platform that allows individuals to pay income taxes with a credit card); State of Nevada Department of Taxation, tax.nv.gov/OnLineServices/Online_Services/ (same); *see also* Superior Court of California, County of San Francisco: Pay Your Traffic or Non-Traffic Citation Online, http://www.sfsuperiorcourt.org/divisions/traffic/traffic-citations (last visited October 6, 2014) (providing an online platform that allows individuals to pay traffic citations with a credit card); Las Vegas Justice Court, www.lasvegasjusticecourt.us/faq/fee_schedule.php (explaining court fees may be paid with a credit card).

---

idea how that money was used.  *Id*.  Easy Loans also has no knowledge about any charges on the Account or why they were incurred.  *Id*. at ¶ 10.

There is no evidence in the record that the Account is a "debt" under the FDCPA.  Summary judgment should be granted in favor of Easy Loans.

## C.   There Is No Evidence That Easy Loans Is A "Debt Collector" Subject To The FDCPA

Izquierdo also cannot meet his burden of proving Easy Loans is a "debt collector" under the FDCPA.  Easy Loans did nothing more than purchase Izquierdo's Account and hand it off to a law firm and to Troy Capital for servicing.  It was nothing more than a passive owner of his Account that engaged in no collection activity.  As a result, Easy Loans is entitled to summary judgment.

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Some courts have treated assignees that acquire debts in default, and who then attempt to collect on them, as debt collectors subject to the FDCPA.  *See, e.g., Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (debt buyer that sent collection letter to consumer was a "debt collector" under the FDCPA).

There is no evidence that Easy Loans is a "debt collector" under the first prong of section 1692a(6).  Izquierdo cannot prove the principal purpose of Easy Loans' business is the collection of debts via interstate commerce or the mail.[12]  On the contrary, the record establishes that Easy Loans – which has no employees – merely

---

[12]  *Cf. Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1209 (9th Cir. 2013) ("The complaint fails to provide any factual basis from which we could plausibly infer that the principal purpose of Wells Fargo's business is debt collection.  Rather, the complaint's factual matter, viewed in the light most favorable to the Schlegels, establishes only that debt collection is some part of Wells Fargo's business, which is insufficient to state a claim under the FDCPA.").

acquired the Account and referred it to a law firm and to Troy Capital for collection. *See* Statement at ¶¶ 11-15.  Troy Capital subsequently placed the Account with MBBW who filed the State Court Action.  *Id*. at ¶¶ 16-17.  There is no evidence showing that Easy Loans made any collection calls or sent any collection letters to Izquierdo, and he admitted he received none from the company.  *Id*. at ¶¶ 12-17.

Nor can Izquierdo prove that Easy Loans is a "debt collector" under the second prong of section 1692a(6).  There is no evidence that Easy Loans "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Even assuming the Account was in default when it was purchased by Easy Loans, there is no evidence that Easy Loans did anything to try to collect it.

This case is similar to *Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036 (N.D. Ill. 2005).  There, Hilco, a debt buyer, acquired plaintiff's credit card debt and referred it to MRS, a collection agency, which sent plaintiff a letter that allegedly violated the FDCPA.  *See id*. at 1037-38.  The court granted Hilco's motion for summary judgment, agreeing that plaintiff could not prove that Hilco "acted directly or indirectly to collect her debt."  *Id*.

Examining the definition of "debt collector" in section 1692a(6), and citing *Schlosser*, the court observed that "[a]t first blush," Hilco appeared to be a debt collector because it acquired plaintiff's debt "after she defaulted."  *Id*. at 1037.  The court then observed, however, that "Hilco did not act directly to collect Scally's debt: Hilco never contacted Scally to collect the debt nor did Hilco mail the allegedly offending collection letter.  Rather, Hilco outsourced the activity of debt collection to co-defendant MRS, which mailed the letter that is the basis of Scally's complaint." *Id*.  The pertinent question, therefore, was "whether Hilco acted indirectly when it contracted with MRS for the collection of Scally's debt," specifically, whether Hilco was vicariously liable for MRS collection efforts.  *See id*. at 1037-1038.

Hilco had referred the account to MRS "pursuant to a 'Recovery Agreement,'" which authorized MRS "to take all actions deemed appropriate in the ordinary course

of its business." *Id.* at 1038.  After referring accounts to MRS, "Hilco has little contact with debt-holders.  Importantly, Hilco does not initiate any contact with debt-holders.  In this case, it did not send any letters to Scally, nor did it contact her by telephone.  Both parties agree that MRS sent the allegedly infringing communication at issue in this case to Scally and the other class members." *Id.*  The court described the collection efforts by MRS undertook, its authority to settle accounts, and its authority to accept and deposit payments and to remit funds to Hilco.  *See id.*  Hilco, meanwhile, exercised no control over the content of MRS's communications with debtors, beyond requiring MRS to comply with various laws and restricting its ability to use Hillco's name when communicating with debtors.  *See id.*  There was no evidence "that Hilco inspected the letter MRS sent to [plaintiff] or otherwise authored or approved the content of the letter." *Id.*

Turning to "general principles of agency law," the court concluded there was no basis to hold Hilco vicariously liable for the conduct of MRS.  There was insufficient evidence of control by Hilco over the collection efforts of MRS, even though the parties conducted monthly conference calls and regularly communicated by email, Hilco retained authority for certain settlements below a specified threshold, and Hilco furnished information about the debtors to the credit reporting agencies. *Id.* at 1040.  None of these factors gave Hilco "control over MRS's routine interactions with debtors," or suggested "that Hilco controlled either the mechanisms or the content of MRS's contact with debtors." *Id.*  There was no evidence that Hilco attempted to contact debtors, and its ability to furnish information to the credit reporting agencies "says nothing about its control over MRS's interactions with debtors." *Id.*  Nor was there evidence "that Hilco exerted control or had the contractual right to assert control over the content of the allegedly infringing collection letter MRS mailed to Scally." *Id.*  Thus, Hilco was not vicariously liable for the letter MRS sent and therefore did not act indirectly under section 1692a(6) when it retained MRS to collect plaintiff's debt. *See id.* at 1042.

Here, as in *Hilco*, Easy Loans has not engaged in collection activity. Rather, it simply purchased the Account and handed it off to others for collection. *See* Statement at ¶¶ 11-15. As Mr. Willey explained:

> Easy Loans does not do any collection activity. It doesn't engage in it in any way, shape, or form. So it simply hands it off to Troy Capital, and then Troy Capital outsources it to the attorneys and then processes all the documents, all the AR and the AP work comes through.

*Id.* at ¶ 15, pp. 34:20-25. When asked to clarify the process, Mr. Willey testified:

> Easy Loans would buy a file, okay? By way of example, let's say that Easy Loans bought a file from let's say Creditor A. Creditor A provides account level information. Certain, you know, required supporting documentation for, you know, validating the debt and the chain of title, all of that, which I'm sure you're probably familiar with how that process works, **So, at that point, Troy Capital takes over the processing of the accounts. So essentially Easy Loans buys it and says, Here you go. Here's the information I got, deal with it.**

*Id.* at pp. 35:15-24 (emphasis added). It was Troy Capital, not Easy Loans, that retained the law firm to file the State Court Action against Izquierdo. *Id.* at ¶¶ 15-17. Izquierdo confirmed that he did not receive any phone calls or letters from Easy Loans, nor did he have any contact with the company. *Id.* at ¶ 14.

To the extent, Izquierdo argues in his opposition papers that Easy Loans is vicariously liable for the acts of Troy Capital or the law firm that filed suit, the Court should not consider the claim. There are no such allegations in the Complaint and he is barred from raising a new theory of recovery in opposition to summary judgment. *See, e.g., Coleman*, 232 F.3d at 1292-93 (plaintiff could not proceed with new theory not pled in complaint). As the Ninth Circuit explained, allowing Izquierdo to proceed on a new theory would prejudice Easy Loans because "[a] complaint guides the parties' discovery putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Id.* The issue, as framed by the Complaint, is whether Easy Loans was engaged in the collection of debts as defined by the FDCPA. The evidence in the record shows it was not.

**D.    The State Court Action Was Filed Within The State Of Limitations**

    **1.    The Account Was Founded Upon An Instrument In Writing, Therefore Nevada's Six-Year Statute Of Limitations Applies**

The FDCPA claims are based solely on the theory that the claims in the State Court Action were time-barred, either by the Nevada or the California four-year statute of limitations. *See* Doc. No. 1 at ¶¶ 10-11.[13]   Izquierdo allegedly defaulted on the Account on or about May 26, 2008, and on November 29, 2012, the State Court Action was filed against him.  He admits the Account was founded on an instrument in writing. *See* Statement at ¶¶ 1, 18.  Given this, Nevada's six-year statute of limitations applies, and the State Court Action was filed timely.[14]

Under N.R.S. § 11.190(b), the statute of limitations for an action upon a contract, obligation, or liability founded upon an instrument in writing, is six years. *See* Nev. Rev. Stat. Ann. § 11.190.  In *El Ranco, Inc. v. New York Meat & Provision Co.*, 88 Nev. 111 (1972), the Nevada Supreme Court held that a claim to recover on an open account may be "founded upon an instrument of writing" if the amounts due

---

[13] In his motion, Plaintiff argues that Delaware's three-year statute of limitations applies to the Account. *See* Doc. No. 33 at pp. 2:14-3:3, 5:22-6:3, 6:11-14, 11:13-24. As discussed above and in Easy Loans' opposition to that motion, he cannot use this new theory not pled in the Complaint to obtain or oppose summary judgment. *See* Doc. No. 33 at p. 17, n. 19; *supra*, III.C. at p. 15.  Further, neither party has any evidence that the card member agreement containing the Delaware choice of law provision that Izquierdo relies on applies to the Account and an unauthenticated agreement cannot be considered on summary judgment. *See* Doc. No. 33 at pp. 17-19.

[14] In Nevada, courts apply the statute of limitations of the forum state unless "(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." *See Bagley v. Beville,* 2014 WL 28873, *2 (D. Nev. Jan. 2, 2014) (quoting Restatement (Second) Conflicts of Law § 142).  Neither factor exists here.  Indeed, Izquierdo testified he has been residing continuously in Nevada since July 2008. *See* Statement ¶ 7.  Further, he is pursuing this action against Easy Loans in Nevada.  As a result, Nevada's statute of limitations applies to the the claims asserted in the State Court Action.

are reflected in sales receipts and monthly statements. *Id.* at 112-13 (claim to recover balance due on twenty-six separate purchases of meat items made on open account was subject to six-year statute of limitations in NRS 11.190.1(b)).  The court noted that the six-year limitations period in NRS 11.190.1(b) is <u>not</u> limited to "'contracts in writing' but relates to any obligation or liability founded upon an instrument in writing."  *El Ranco,* 88 Nev. at 113.  Further, "a strict construction should not be applied by the courts in determining what does and what does not constitute a 'contract in writing.'" *Id*. at 115.  As a result,

> If the instrument acknowledges or states a fact from which the law implies an obligation to pay, such obligation is founded upon a written instrument within the statute.  If the writing upon its face shows a liability to pay, such liability is on a written instrument within the statute of limitations.

*Id.* at 114-115; *see also Webster v. Beazer Homes Holdings Corp*., 2013 WL 271448, at *5 (D. Nev. Jan. 23, 2013) (claim based on unpaid invoices sent by contractor to developer was an action "founded upon an instrument in writing" and subject to six-year limitations period in NRS 11.190.1(b)); *State v. Jarman*, 84 Nev. 187, 189 (1968) (where customer wrote check to store to pay a pre-existing open account, the check was an instrument in writing that extended the store's statute of limitations from four years to six years under NRS 11.190.1(b)).

The claims in the State Court Action are indisputably "founded upon an instrument in writing."  Izquierdo testified that he is sure he signed a credit application and that he received the contract when his credit card came in the mail.  *See* Statement at ¶¶ 1-2.  In addition, he received monthly statements from Chase, he read them and he never disputed any of the charges.  *Id*. at ¶ 4.  In his Complaint and in response to Easy Loans' Requests for Admission, he admits the Account was founded upon an instrument in writing.  Doc. No. 1 at ¶ 10; Statement at ¶ 18.

Izquierdo was still making payments on the Account as late as April 3, 2008.  *See* Statement at ¶ 6.  Thus, the State Court Action filed on November 29, 2012 was

well within Nevada's applicable six year limitations period.  It is Easy Loans, not Izquierdo, that is entitled to summary judgment.

### 2. If The Court Finds California's Four-Year Statute Of Limitations Applies, The Limitations Period Was Tolled And The State Court Action Was Timely

In his Complaint, Izquierdo alleges that because he obtained the Account from Chase and incurred charges while he was living in California, the Account was subject to California's law four year statute of limitations.  Doc. No. 1 at ¶¶ 10, 21. For the reasons discussed above, Nevada's six year limitations period applies. However, if the Court were to conclude that California's statute of limitations applies to the Account, then California law regarding tolling must also apply.  The limitations period was therefore tolled during Izquierdo's absence from California, and thus the State Court Action was timely filed.

Several courts, including the United States Supreme Court, have held that when a court applies a certain state's statute of limitations, the court must also apply the state's rules for tolling the limitations period.  *See, e.g., Johnson v. Railway Exp. Agency, Inc.,* 421 U.S. 454, 463 (1975) ("Any period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action . . . In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application.  In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim."); *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999) ("In actions like this one, where the federal courts borrow the state statute of limitations, we also borrow the forum state's tolling rules."); *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) ("'[S]tate tolling principles are generally to be used by a federal court when it is applying a state limitations period.'").

Under California law, the statute of limitations is tolled while a defendant is absent from the state. Section 351 of the California Code of Civil Procedure provides:

> If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action.

*See* Cal. Civ. Proc. Code § 351. Thus, the limitations period would not run while Izquierdo was absent from California. *Green v. Zissis*, 5 Cal. App. 4th 1219, 1222 (1992). The tolling of the limitations period not affected by the nonresidence of the party asserting the claim. *Cvecich v. Giardino*, 37 Cal. App. 2d 394, 400 (1940).

Izquierdo was living in Los Angeles, California, when he opened his account and subsequently defaulted in May 2008. *See* Statement at ¶¶ 1, 5-7. In July 2008, he moved to Nevada. *Id*. at ¶ 7. He testified that he has been back to California intermittently, but has spent no more than 30 days in California. *Id*. Accordingly, if the Court finds, as Izquierdo alleged, that California's statute of limitations applies, pursuant to section 351 of the California Code of Civil Procedure, at most three months has run on the claims against him in the State Court Action. For the rest of the four year limitations period, Izquierdo was absent from California. The claims in the State Court Action were therefore timely.

## IV.   **CONCLUSION**

Easy Loans respectfully requests that the Court enter an Order granting summary judgment for Easy Loans on all causes of action in the Complaint.

Dated: October 21, 2014                  SIMMONDS & NARITA LLP
                                         TOMIO B. NARITA (*pro hac vice*)


                                         By: ___/s/ Tomio B. Narita_____
                                              Tomio B. Narita
                                              Attorney for Defendant
                                              Easy Loans Corporation